# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHNA FIEDLER,

    Plaintiff,

        v.

STROUDSBURG AREA SCHOOL
DISTRICT, *et al.*,

    Defendants.

NO. 3:19-CV-0983

(JUDGE CAPUTO)

## **MEMORANDUM**

Presently before me is a Motion to Dismiss (Doc. 9) filed by Defendants Stroudsburg Area School District (the "District"), John A. Toleno ("Toleno"), Ryan Cron ("Cron"), and Joanna Kovacs ("Kovacs") (collectively, where appropriate, "Defendants"). Plaintiff Johna Fiedler alleges that after she suffered a concussion in 2014, her doctors instructed her not to participate in activities which presented the threat of additional concussions. Defendants were aware of this, and a Section 504 plan was put in place. As a result, Fiedler was excused from gym classes that posed risks of future concussions, including classes involving sports like basketball or football. Yet, despite these restrictions, Kovacs, a junior high gym teacher, forced Fiedler to participate in gym class one day and gave her the choice of playing basketball or football. Fiedler sustained injuries during that class after she was struck in the back of the head with a basketball.

Fiedler subsequently commenced this litigation asserting that Defendants violated her rights under the United States Constitution, the Pennsylvania Constitution, the Rehabilitation Act, and the Americans with Disabilities Act. Defendants have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

The motion to dismiss will be granted in part and denied in part. Because

Fiedler adequately states a Fourteenth Amendment due process claim against Kovacs for the alleged deprivation of bodily integrity on a state-created danger theory, she will be permitted to proceed with that claim. Otherwise, the Complaint fails to state a claim upon which relief can be granted, so the remaining causes of action will be dismissed. But, Fiedler will be given the opportunity to amend with respect to her Rehabilitation Act/Americans with Disabilities Act claim, her procedural due process claim, and her substantive due process claim against the District, Toleno, and Cron.

## I. Background

The facts as alleged in the Complaint are as follows:

Fiedler is an adult and former student at Stroudsburg Junior High School. (*See* Doc. 1, ¶ 3). Cron was the Stroudsburg Junior High School principal, while Kovacs was a gym teacher at that school. (*See id*. at ¶¶ 5-6). Toleno was the District superintendent. (*See id*. at ¶ 4).

In March 2014, Fiedler suffered a concussion from a snowboarding accident. (*See id*. at ¶ 12). As a result, Fiedler's physicians prohibited her from participating in any activities which would expose her to further concussions, including those involving potential or actual contact with athletic balls. (*See id*.). Thus, she was excused from participation in physical education classes when such activities were occurring. (*See id*.). Fiedler's mother conveyed this information to the District, namely to Cron, Kovacs, a guidance counselor, and the school nurse. (*See id*. at ¶ 13).

On June 11, 2014, Fiedler should have been a non-participant in her physical education class taught by Kovacs because the class was playing basketball and football. (*See id*. at ¶ 22). Fiedler, however, was forced to participate in gym class that day despite the medical documentation on file. (*See id*. at ¶¶ 23-24). Kovacs felt "it ha[d] been long enough" and "forced" Fiedler to choose between playing football or basketball. (*See id*. at ¶ 24). Fiedler protested, but nonetheless went onto the basketball court with a group of classmates. (*See id*. at ¶ 24). Although she was cognizant and vigilant to avoid injury, Fiedler was still struck in the back of her head

2

by a basketball. (*See id*. at ¶¶ 25-26). She immediately experienced nausea, dizziness, and a headache. (*See id*. at ¶ 27). Fiedler was disoriented, but managed to proceed to the school nurse on her own. (*See id*. at ¶¶ 28-29). When Fiedler sustained the injury, Kovas was in an office, not the gym. (*See id*. at ¶ 30). After her visit to the nurse's office, Fiedler returned to her normal course of study. (*See id*. at ¶ 33).

Upon learning of Fiedler's injury, her mother arranged an appointment with her concussion specialist. (*See id*. at ¶ 40). As a result of the incident during her gym class, Fiedler was injured and continues to suffer ill-effects from that injury. (*See id*. at ¶¶ 43-45). Her symptoms also worsened "with increased efforts on her school work, and as a result, her performance level severely declined." (*Id*. at ¶ 48). This required additional and continued accommodations for Fiedler to meet her school work. (*See id*. at ¶ 49).

Based on the foregoing, Fiedler commenced this action on June 7, 2019. (*See* Doc. 1, *generally*). In the Complaint, Fiedler asserts the following claims: (1) "Amendment Fourteen - due process clause for injury to human dignity" against all Defendants (Count I); "Amendment Fourteen due process clause for injury to bodily integrity" against all Defendants (Count II); (3) "Amendment Fourteen due process clause for injury as a result of a state created danger/special relationship" against all Defendants (Count III); (4) violation of Pennsylvania Constitution Article I, Section I for injury to bodily integrity against all Defendants (Count IV); (5) "Amendment Fourteen due process clause for injury to human dignity" against the District (Count V); (6) "Amendment Fourteen due process clause for injury to bodily integrity" against the District (Count VI); (7) "Amendment Fourteen due process clause for injury as a result of a state created danger/special relationship" against the District (Count VII); (8) violation of Pennsylvania Constitution Article I, Section I for injury to Fiedler's property right to education against all Defendants (Count VIII); (9) "Amendment Fourteen due process clause/deprivation of property interests by failing to provide an education" against all Defendants (Count IX); (10) violation of the

3

Rehabilitation Act and the Americans with Disabilities Act against all Defendants (Count X); and (11) "Amendment Fourteen violation of equal protection" against all Defendants (Count XI). (*See id*., *generally*).

On October 9, 2019, Defendants filed a motion to dismiss and supporting brief. (*See* Docs. 9-10, *generally*). Fiedler filed her brief in opposition to the motion to dismiss on November 5, 2019. (*See* Doc. 13, *generally*). On November 19, 2019, Defendants filed a reply in further support of their motion to dismiss. (*See* Doc 14, *generally*). The motion to dismiss is therefore fully briefed and ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "Under the 'notice pleading' standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014) (quoting Fed. R. Civ. P. 8(a)(2)).

When resolving a Rule 12(b)(6) motion, "a court must consider no more than whether the complaint establishes 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements' of the cause of action." *Trzaska v. L'Oreal USA, Inc.*, 865 F. 3d 155, 162 (3d Cir. 2017) (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)). In reviewing the sufficiency of a complaint, a court must take three steps: (1) identify the elements of the claim; (2) identify conclusions that are not entitled to the assumption of truth; and (3) assume the veracity of the well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief. *See Connelly*, 809 F.3d at 787 (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

## III. Discussion

Defendants' motion raises several grounds for dismissal of the Complaint. (*See* Doc. 10, *generally*). First, though, Fiedler concedes to the dismissal of her Equal Protection Clause claim (Count XI), as well her claims against Defendants Toleno, Cron, and Kovacs in their official capacities. (*See* Doc. 13, 32).[1] Thus, those claims will be dismissed without discussion. Moreover, Counts V-VII of the Complaint will be dismissed because they are redundant of the claims in Counts I-III. Specifically, Fiedler's first three claims are asserted against all Defendants, and then those exact claims are asserted separately in Counts V-VII against the District only. (*See* Doc. 1, *generally*). Because the District is included in the claims asserted in Counts I-III,

---

[1]     In their submissions, Defendants insist that individual Defendants are sued only in their official capacities. (*See* Doc. 10, 14-15; Doc. 14, 3-4). They do this even though (1) the Complaint does not specify whether Toleno and/or Kron are sued in their individual or official capacities (but punitive damages are demanded against them), and (2) the Complaint specifically states that "Kovacs is sued in her individual capacity." (Doc. 1, ¶ 6). With respect to Kovacs, Defendants contend that Fiedler actually intended to sue her in her official capacity because Kovacs is also alleged to have been "acting within the course and scope of her employment[.]" (Doc. 10, 14 n.5; Doc. 14, 4 n.1). Defendants' argument on this point is not well-taken for two reasons. One, it involves repeated mischaracterizations of the Complaint and Fiedler's opposition brief. For example, they say that Fiedler "agrees that [individual] Defendants should be dismissed", (Doc. 14, 4 n.2), when, quite clearly, Fiedler concedes to the dismissal of the official capacity claims against these Defendants but not the individual capacity claims. (*See* Doc. 13, 31 ("official capacity suits against individual defendants are conceded as redundant . . .")). In short, misrepresenting a party's position is simply unhelpful to the adversarial process. Second, that Kovacs allegedly acted in the course of her employment does not mean that she is sued in her official capacity. *See, e.g.*, *Hafer v. Melo*, 502 U.S. 21, 27, 122 S. Ct. 358, 116 L. Ed. 2d 301 (1991) (rejecting the argument that "state officials may not be held liable in their personal capacity for actions they take in their official capacity."); *see also id.* at 26, 122 S. Ct. 358 ("the phrase acting in their official capacities is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury.").

Counts V-VII are redundant, so they will be dismissed.

## A. Section 1983 Claims.

Pursuant to 42 U.S.C. § 1983,[2] Fiedler claims that Defendants violated her due process rights protected by the Fourteenth Amendment to the United States Constitution.[3] The Due Process Clause has both substantive and procedural components. *See Evans v. Sec'y Pennsylvania Dep't of Corr.*, 645 F.3d 650, 658 (3d Cir. 2011). "The substantive component of the Due Process Clause 'protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 172 (3d Cir. 2001) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125, 112 S. Ct. 1061, 1068, 117 L. Ed. 2d 261 (1992)). The "hallmarks of a procedural due process claim," on the other hand, are "pre-deprivation notice and [a] hearing." *Burella v. City of Philadelphia*, 501 F.3d 134, 146 (3d Cir. 2007); *see also Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (the "fundamental requirement" of procedural due process is "the opportunity to be heard at a meaningful time and in a meaningful manner."). Fiedler raises four due process claims here: (1) injury to human dignity; (2) injury to bodily integrity; (3) state-created danger; and (4) deprivation of property interest in education. The first three are substantive due process claims, while the fourth is for a violation of procedural due process. (*See* Doc. 1, *generally*). Defendants seek dismissal of each claim.

---

[2] Section 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." 42 U.S.C. § 1983.

[3] The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property without due process of law[.]" U.S. Const. amend XIV, § 1.

### 1. Human Dignity.

Count I of the Complaint asserts a claim for violation of Fiedler's right to human dignity. (*See* Doc. 1, Count I). Defendants move to dismiss this claim on the basis that such a cause of action is only viable in the penal setting. (*See* Doc. 10, 4-5). Fiedler opposes the dismissal of the human dignity claim. (*See* Doc. 13, 10-12).

The human dignity claim will be dismissed with prejudice. As explained by the United States District Court for the Western District of Pennsylvania, the human dignity "thread of Fourteenth Amendment jurisprudence exists, but it does so principally in coerced custodial or penal settings." *Dorley v. South Fayette Twp. Sch. Dist.*, 129 F. Supp. 3d 220, 230 (W.D. Pa. 2015); *see also B.D. v. Downingtown Area Sch. Dist.*, No. 15-6375, 2016 WL 3405460, at *2 n.3 (E.D. Pa. June 21, 2016) (observing that "§ 1983 claims involving the right to human dignity have generally only been recognized in the prisoner context"). As a result, the *Dorley* court found that the claim for human dignity merged with the plaintiff's claim for injury to bodily integrity based on a state-created danger. *See Dorley*, 129 F. Supp. 3d at 231. Dismissal of the human dignity claim is warranted for the same reasons here, so Count I will be dismissed with prejudice.

### 2. Bodily Integrity and State-Created Danger.

Count II of the Complaint sets forth a claim for injury to bodily integrity, while Count III is for a state-created danger. (*See* Doc. 1, Counts II-III). "Individuals have a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008). "However, the Due Process Clause does not impose an affirmative obligation on the state to protect its citizens." *Id*. (citing *DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 195-96, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989)). As a result, when the alleged harm is directly caused by a "third party, non-state actor," courts generally conclude that "there is no analytical distinction" between an injury to bodily integrity claim and a claim predicated on a

state-created danger. *Dorley*, 129 F. Supp. 3d at 231-32. This is because "the state-created danger doctrine is one theory used to assert a claim for harm to one's bodily integrity . . . ." *Id*. Accordingly, the claim for injury to bodily integrity in Count II will be dismissed as duplicative to Count III, and I will consider Fiedler's claim to injury to bodily integrity by way of the state-created danger doctrine. *See id*.; *see also Cuvo v. Pocono Mountain Sch. Dist.*, No. 18-1210, 2019 WL 1424524, at *6 (M.D. Pa. Mar. 29, 2019) ("a claim under § 1983 for a violation of the due process right to bodily integrity is brought under the state-created danger doctrine."); *Keener v. Hribal*, 351 F. Supp. 3d 956, 970 n.6 (W.D. Pa. 2018); *R.B. by Hickey v. Enterline*, No. 16-1583, 2017 WL 2536110, at *5 (M.D. Pa. June 12, 2017) ("Her claim for a violation of her Fourteenth Amendment right to bodily integrity, therefore, necessarily relies upon the sufficiency of her state created danger claim. My analysis will therefore be limited to the plausibility of R.B.'s claim under that theory.").

The Third Circuit has "recognized that a state actor may be held liable under the 'state-created danger' doctrine for creating danger to an individual in certain circumstances." *Henry v. City of Erie*, 728 F.3d 275, 281 (3d Cir. 2013) (citing *Morrow v. Balaski*, 719 F.3d 160, 176 (3d Cir. 2013)). Liability may attach under this doctrine "where the state acts to create or enhance a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." *Morrow*, 719 F.3d at 177 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1205 (3d Cir. 1996)). To prevail on a state-created danger theory, a plaintiff must prove four elements:

> 1) the harm ultimately caused was foreseeable and fairly direct;
>
> 2) a state actor acted with a degree of culpability that shocks the conscience;
>
> 3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> 4) a state actor affirmatively used his or her authority in a

way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Id*. (quoting *Bright v. Westmoreland Cty.*, 443 F.3d 276, 281 (3d Cir. 2006)).

Defendants contend that Fiedler fails to present a substantive due process claim on a state-created danger theory for several reasons. First, they argue that as to Toleno and Cron, the claim fails because they are not alleged to have taken any action and the claims against them are predicated solely on their positions as superintendent and principal. (*See* Doc. 10, 7). Second, Defendants insist that the claim should be dismissed as against Kovacs because Fiedler only avers that "she was allowed to participate in gym class." (Doc. 10, 8). As a result, Defendants conclude that: (1) Fiedler has failed to plausibly plead that the harm she suffered was foreseeable and fairly direct; (2) she fails to plead conscious shocking conduct and at most sets forth allegations of negligence by Kovacs; and (3) Kovacs' conduct amounts to inaction which is insufficient to give rise to liability on a state-created danger theory. (*See id*.). Finally, with respect to the District, Defendants fault this aspect of Fiedler's claim because it seeks to hold the District liable under a *respondeat superior* theory. (*See id*. at 8-10).

Fiedler opposes the dismissal of the claim. (*See* Doc. 13, 15-24). Specifically, Fiedler disputes that the claim is one for inaction based on her allegation that Kovacs forced her to participate in gym class. (*See id*. at 20). She also emphasizes that the Complaint clearly states that the harm she suffered was a foreseeable and direct consequence of Defendants' conduct. (*See id*. at 15-16). Fiedler further contends that a school official's disregard of specific instructions by medical professionals as alleged in the Complaint are conscience shocking. (*See id*. at 16).

The due process claim brought under the state-created danger doctrine against Toleno and Cron will be dismissed. Individual liability can be imposed under § 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of *respondeat superior*." *Evancho v.*

9

*Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)); *Sutton v. Rasheed*, 323 F.3d 236, 249-50 (3d Cir. 2003). The personal involvement of a defendant in a § 1983 action may be shown "through allegations of personal direction or of actual knowledge and acquiescence." *Argueta v. U.S. ICE*, 643 F.3d 60, 72 (3d Cir. 2011) (quoting *Rode*, 845 F.2d at 1207). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of "conduct, time, place, and persons responsible." *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208. Moreover, a defendant "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201-202 (3d Cir. 2000). Allegations that a supervisor "had constructive knowledge of a subordinate's unconstitutional conduct simply because of his role as a supervisor" do not suffice. *Broadwater v. Fow*, 945 F. Supp. 2d 574, 588 (M.D. Pa. 2013) (citing *C.H. ex rel. Z.H.*, 226 F.3d at 202).

The Third Circuit has recognized that "there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)) (internal quotations omitted); *see also Laurensau v. Romarowics*, 528 F. App'x 136, 140 n.2 (3d Cir. 2013) ("A supervisor can be held individually liable if his failure to properly train or supervise a subordinate caused a deprivation of the plaintiffs constitutional rights. However, a plaintiff must demonstrate that the supervisor's failure to train amounted to 'deliberate indifference' and that the failure to train was

closely related to the plaintiff's injury.").

In the matter *sub judice*, Fiedler does not allege that Toleno and/or Cron had any personal involvement in the alleged deprivation of Fiedler's right to bodily integrity. (*See* Doc. 1, *generally*). Further, neither of these Defendants are claimed to have had actual knowledge and acquiesced to the deprivation of that right, nor has Fiedler pled that Toleno or Cron established a policy or custom that caused her harm. (*See id*., *generally*). In other words, Fiedler has not stated a plausible basis to invoke either theory of supervisory liability against Toleno or Cron. Accordingly, Count III of the Complaint as against Toleno and Cron will be dismissed, but that dismissal will be without prejudice.

Conversely, Fiedler will be permitted to proceed with her deprivation of bodily integrity claim based on a state-created danger against Kovacs. Fiedler first pleads that the harm ultimately caused was foreseeable and fairly direct. In particular, Fiedler alleges that she had previously sustained a concussion and was prohibited by her physician from participating in physical education classes involving risk of contact with athletic balls in order to avoid suffering further injuries, facts known by Kovacs. (*See* Doc. 1, ¶¶ 12-13, 22-26). It was thus foreseeable that Fiedler would be struck in the head with a ball during gym class and she would sustain additional injuries. *See*, *e.g.*, *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 171 (3d Cir. 2017) (having student continue to practice football after a hit and thereafter suffering a traumatic brain injury on a subsequent hit was "foreseeable and fairly direct").

Next, Fiedler adequately alleges conscious shocking behavior by Kovacs. According to the facts pled by Fiedler, Kovacs was aware that Fiedler had previously sustained a concussion, that she was not to participate in physical education classes involving sports such as football or basketball, and this was based on a determination by Fiedler's physicians. (*See* Doc. 1, ¶¶ 12-13, 22-23). Nevertheless, Kovacs concluded that it had "been long enough" and "forced" Fiedler to participate in gym class and play either football or basketball on June 11, 2014. (*See id*. at ¶ 24). These

allegations are sufficient to meet the second element because they reflect that Kovacs acted with deliberate indifference to Fiedler's constitutional rights. *See Mann*, 872 F.3d at 171 (to meet the second element when "the state actor has the benefit of deliberation . . . all the plaintiff needs to show is deliberate indifference"); *see also Phillips*, 515 F.3d at 240 ("where officials are afforded the luxury of a greater degree of deliberation and have time to make unhurried judgments, deliberate indifference is sufficient to support an allegation of culpability.").

The third element is also sufficiently alleged. For one, it is not challenged by Defendants. Further, "the 'foreseeable victim' element requires that some sort of relationship exist between the state actor and the plaintiff such that the plaintiff was a foreseeable victim of the state actor's conduct." *L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235, 247 (3d Cir. 2016). Quite clearly this element is satisfied here as Fiedler was a student in Kovacs' physical education class. *See*, *e.g.*, *Mann*, 872 F.3d at 172 ("It is clear that a student-athlete stands in such a relationship with the coaching staff."); *Weiser v. Elizabethtown Area Sch. Dist.*, No. 17-625, 2018 WL 1071929, at *7 (E.D. Pa. Feb. 27, 2018) (student was a foreseeable victim of school district's conduct).

Lastly, Fiedler pleads affirmative action by Kovacs which made her more vulnerable than she would have been had Kovacs done nothing at all. The Third Circuit has made clear that under the fourth element, liability "is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger. It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Bright*, 443 F.3d at 282 (internal citations and quotation omitted). Accordingly, to establish the fourth element, Fiedler must identify "an affirmative action, rather than inaction or omission." *Phillips*, 515 F.3d at 236. And, while the Third Circuit has emphasized that "the line between action and inaction is not always easily drawn," *Morrow*, 719 F.3d at 178, it has "never found a state-created danger claim to be meritorious without an allegation and subsequent showing that

12

state authority was affirmatively exercised." *Bright*, 443 F.3d at 282. But, the affirmative act requirement "is not intended to turn on semantics of act and omission. Instead, the requirement serves to distinguish cases where officials might have done more from cases where officials created or increased the risk itself." *Morrow*, 719 F.3d at 179 (alterations and citation omitted).

Defendants argue that Fiedler's claim fails because Kovacs only "allowed [her] to participate in gym class," meaning she did not engage in an affirmative act as required to sustain a due process claim on a state-created danger theory. (Doc. 10, 8; Doc. 14, 8). But the crux of the deprivation of bodily integrity claim is that Fiedler was medically excused from participating in physical education classes that included a risk of contact while she was recovering from a concussion. Yet, despite this, Kovacs "forced" Fiedler to participate in a gym class and play basketball or football. (*See* Doc. 1, ¶¶ 24). Accepting these allegations as true, Kovacs engaged in an affirmative act rendering Fiedler more vulnerable to danger by forcing Fiedler to participate in gym class despite knowing of Fiedler's prior injury and restriction on participation. *Accord Mann*, 872 F.3d at 172 ("if a jury concluded that Walkowiak was aware of the first blow to Sheldon's head and observed signs of a concussion, the jury could conclude that Walkowiak used his authority in a way that rendered Sheldon more vulnerable to harm by sending him back into the practice session."); *Hall v. Martin*, No. 17-523, 2017 WL 3298316 at *3-4 (W.D. Pa. Aug. 2, 2017) (holding that a plaintiff adequately alleged a substantive due process claim under the state-created danger doctrine where the plaintiff was hit with a hockey puck during floor hockey in gym class and alleged the gym teacher created the danger by allowing students to play floor hockey without protective gear after encouraging the students to play the game like they were playing regular hockey). Fiedler has stated the necessary elements of a deprivation of bodily integrity claim on a state-created danger theory against Kovacs, so that claim will not be dismissed.

Finally, as to the bodily integrity claim against the District, a governmental

entity, such as a school district, cannot be held liable for the alleged unconstitutional actions of its employees on a theory of *respondeat superior*. *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Instead, a § 1983 claim against a municipality may proceed in two ways: the plaintiff may allege that an unconstitutional municipal policy or custom led to his injuries or that his injuries were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice. *See Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citing *Estate of Roman v. City of Newark*, 914 F.3d 789, 798-99 (3d Cir. 2019)). The Third Circuit succinctly explained these available avenues in *Forrest*:

> Plaintiffs that proceed under a municipal policy or custom theory must make showings that are not required of those who proceed under a failure or inadequacy theory, and vice versa. Notably, an unconstitutional municipal policy or custom is necessary for the former theory, but not for the latter, failure or inadequacy theory. [*Roman*, 914 F.3d] at 798 ("[F]or failure-to-train claims . . .[,] a plaintiff need not allege an unconstitutional policy.") (citing *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997)). This difference can be significant because a plaintiff presenting an unconstitutional policy must point to an official proclamation, policy or edict by a decisionmaker possessing final authority to establish municipal policy on the relevant subject. And, if alleging a custom, the plaintiff must evince a given course of conduct so well-settled and permanent as to virtually constitute law. *Id*. On the other hand, one whose claim is predicated on a failure or inadequacy has the separate, but equally demanding requirement of demonstrating a failure or inadequacy amounting to deliberate indifference on the part of the municipality. *See id*. This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights. *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999).

> Although we have acknowledged the close relationship between policy-and-custom claims and failure-or-inadequacy claims, *Barkes v. First Corr. Med.*, 766 F.3d 307, 316-17 (3d Cir. 2014), the avenues remain distinct: a plaintiff alleging that a policy or custom led to his or her injuries must be referring to an unconstitutional policy or custom, and a plaintiff alleging failure-to-supervise, train,

> or discipline must show that said failure amounts to deliberate indifference to the constitutional rights of those affected. That is not to say that the plaintiffs cannot be one and the same, with claims sounding in both. They can. *See id.* at 798-99 ("[Plaintiff] has sufficiently alleged a custom of warrantless or nonconsensual searches . . . [and] has also adequately pled that the City failed to train, supervise, and discipline its officers.").

*Id.* at 105-06.

Defendants contend that the bodily integrity claim against the District fails because Fiedler does not plead the necessary requirements for a municipal liability claim. (*See* Doc. 10, 9-10). In particular, Defendants note that Fiedler does not identify an official policy or proclamation, nor does she identify any individual responsible for adopting such a policy. (*See id.*). In other words, Defendants view the claim against the District as sounding solely in *respondeat superior.* (*See id.* at 10). While Fiedler opposes the dismissal of the claim, she does not meaningfully address the arguments supporting dismissal raised by Defendants. (*See* Doc. 13, *generally*). Based on Fiedler's lack of substantive response, Defendants find that Fiedler "has no way of circumventing the general rule that municipal employers are not vicariously liable for an alleged constitutional violation committed by their employee." (Doc. 14, 11). Defendants are right.

For one, Fiedler's failure to address the substance of Defendants' arguments regarding the defects in the municipal liability claim against the District by itself are sufficient to warrant dismissal of that claim. *See* M.D. Pa. L.R. 7.6; *see also Tambasco v. United States Dep't of Army*, No. 17-1857, 2018 WL 1203466, at *2 (M.D. Pa. Mar. 8, 2018); *Sikkelee v. Precision Airmotive Corp.*, No. 07-886, 2011 WL 1344635, at *4 (M.D. Pa. Apr. 8, 2011) (dismissing claims as unopposed when the plaintiff failed to respond to arguments made by the defendants in support of their motion to dismiss); *Lada v. Delaware Cnty. Cmty. Coll.*, No. 08-4754, 2009 WL 3217183, at *10 (E.D. Pa. Sept. 30, 2009) ("To put it simply: plaintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having

those parts of the motions to dismiss granted as uncontested."); *Mussari v. Jermyn Borough*, No. 07-948, 2007 WL 3231800, at *2 (M.D. Pa. Oct. 31, 2007).

Additionally, Fiedler has not presented any non-conclusory, factual allegations to proceed against the District on either a policy-and-custom theory or a failure-or-inadequacy theory. Fiedler does not allege that any policy-making official issued any type of official policy or edict requiring students to participate in physical education classes even when they were excused from doing so by their physicians. Nor has Fiedler alleged that a custom of this nature existed in the District. Thus, a policy/custom claim has not been pled.

Fiedler has also not pled a failure-or-inadequacy claim against the District. To do so, as stated, Fiedler must allege that "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Forrest*, 930 F.3d at 106 (citations omitted). Nothing in the Complaint suggests that similar situations to that with Fiedler occurred or that her circumstances presented a difficult choice or a history of improper handling. For these reasons, Fiedler has not stated a deprivation of bodily integrity on a state-created danger theory against the District. As such, that claim will be dismissed, but Fiedler will be given the opportunity to amend.

### 3.     Property Right to Education.

Fiedler's final § 1983 claim is for the alleged deprivation of her property interest in her public education. This can only proceed as a procedural due process claim because there is no fundamental right to a public education under the United States Constitution. *See Plyler v. Doe*, 457 U.S. 202, 221, 102 S. Ct. 2382, 2396, 72 L. Ed. 2d 786 (1982) ("[p]ublic education is not a 'right' granted to individuals by the Constitution"); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35-36, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973) ("Education . . . is not among the rights afforded

explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected."); *Taylor v. Metuchen Pub. Sch. Dist.*, No. 18-1842, 2019 WL 1418124, at *5 (D.N.J. Mar. 28, 2019) ("to the extent that Plaintiff's substantive due process claim relies on the theory that H.T. was deprived of a fundamental right to a public education, it fails as a matter of law.").

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). Whether a property interest exists for procedural due process purposes is determined by looking at a state law. *See Ruiz v. New Garden Twp.*, 376 F.3d 203, 206 (3d Cir. 2004). "Under Pennsylvania law, a student has a 'legitimate claim of entitlement to a public education.'" *Kirby v. Loyalsock Twp. Sch. Dist.*, 837 F. Supp. 2d 467, 478 (M.D. Pa. 2011) (quoting *Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 149 (3d Cir. 2005)). Defendants do not contest this point, but instead argue that the procedural due process claim should be dismissed because Fiedler fails to plead that her interest in education was denied. (*See* Doc. 10, 10-11). Fiedler responds that because of the injury her "academic rank and standing" were impacted, so she was deprived of her right to education. (*See* Doc. 13, 26). In their reply, Defendants insist that the Complaint lacks allegations that reflect a deprivation of Fiedler's educational rights. (*See* Doc. 14, 11-13).

The procedural due process claim in Count IX of the Complaint will be dismissed. Specifically, Fiedler alleges that after the incident on June 11, 2014, she "returned to her normal course of study within the school district." (Doc. 1, ¶ 33). Fiedler further avers that her performance levels decreased, and that she required additional and continued accommodations to meet the requirements of her school work. (*See id.* at ¶¶ 48-49). But, none of the allegations in the Complaint go to the

manner in which Defendants allegedly infringed upon Fiedler's interest in her education. Fiedler does not identify the type of assistance or accommodation she required, nor does she provide any facts that such requirements were denied. Restated, Fiedler has not set forth any facts as to how any deficiencies in procedure infringed upon her educational rights. *See*, *e.g.*, *Infantino v. West Wyoming Borough*, No. 12-2539, 2013 WL 3972770, at *8 (M.D. Pa. July 31, 2013) ("the plaintiff has failed to plead any facts related to the procedures available or how such procedures violated due process. Therefore, the plaintiff has failed to establish a *prima facie* case for a violation of procedural due process."). Accordingly, the claim as presently presented does not sound in procedural due process, so it will be dismissed, but Fiedler will be given the opportunity to amend.

**B.      Pennsylvania Constitution Claims.**

Counts IV and VIII of the Complaint are for violations of Article I, Section I of the Pennsylvania Constitution. (*See* Doc. 1, Counts IV, VIII). Defendants moved to dismiss these claims, to which Fiedler did not respond. Counts IV and VIII will therefore be dismissed with prejudice as unopposed. *See Tambasco*, 2018 WL 1203466; *Sikkelee*, 2011 WL 1344635, at *4 (dismissing claims as unopposed when the plaintiff failed to respond to arguments made by the defendants in support of their motion to dismiss); *Lada*, 2009 WL 3217183, at *10 ("To put it simply: plaintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motions to dismiss granted as uncontested.").

**C.      ADA/Rehabilitation Act Claim.**

Count X of the Complaint alleges that all Defendants violated § 504 of the Rehabilitation Act, 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*. (*See* Doc. 1, Count X).[4]

---

[4]         I note that such claims cannot be maintained against individual Defendants. *See A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 804 (3d Cir. 2007) ("Suits may be

Section 504 of the Rehabilitation Act bars federally funded entities from discriminating on the basis of disability, providing in relevant part, as follows:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a).  Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Section 504 and ADA claims are subject to the same analysis and thus may be addressed at the same time. *See Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 288 (3d Cir. 2019) (Title II and § 504 claims are considered together because "the substantive standards for determining liability are the same."); *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 260 (3d Cir. 2013); *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 282-83 (3d Cir. 2012).

To successfully plead her claim in Count X, Fiedler must allege that (1) she is "disabled" as defined by the Act; (2) she is "otherwise qualified" to participate in school activities; (3) the school or board of education receives federal financial assistance; and (4) she was excluded from participation in, denied the benefits of, or subject to discrimination at the school. *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 253 (3d Cir. 1999) (citation omitted), *superseded by statute on other grounds as recognized by P.P. v. West Chester Area Sch. Dist.*, 585 F.3d 727 (3d Cir.2009).  Where, like here, (*see* Doc. 1, Count X, Wherefore Clause), a plaintiff seeks compensatory damages on a § 504 claim, the plaintiff must also prove that the discrimination or denial of benefits at issue was intentional, or at least that the

---

brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals.").

defendant exhibited deliberate indifference to the underlying discrimination. *See Shadie v. Hazleton Area Sch. Dist.*, 580 F. App'x 67, 70 (3d Cir. 2014). However, deliberate indifference need not be shown to obtain declaratory, injunctive, or equitable relief. *See K.K. ex rel. L.K. v. Pittsburgh Pub. Schs.*, 590 F. App'x 148, 153 (3d Cir. 2014).

"The 'intentional discrimination' standard demands proof that, at a minimum, the school district exhibited 'deliberate indifference' to the underlying act of discrimination." *Shadie*, 580 F. App'x at 70 (quoting *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013)). "To show deliberate indifference, the plaintiff must establish '(1) knowledge that a federally protected right is substantially likely to be violated . . . and (2) failure to act despite that knowledge.'" *Id*. (quoting *Lower Merion*, 729 F.3d at 265). "Deliberate indifference 'does not require a showing of personal ill will or animosity toward the disabled person,' but 'must be a deliberate choice, rather than negligence or bureaucratic inaction.'" *Id*. (quoting *Lower Merion*, 729 F.3d at 263).

Defendants contend that the Complaint fails to allege facts that would support a finding of deliberate indifference, so the "claims for violations of the Rehabilitation Act and the Americans with Disabilities Act must be dismissed . . . ." (Doc. 10, 12-13). Fiedler responds that proof of intentional discrimination is not required to establish a violation of § 504. (*See* Doc. 13, 31-32). Replying to that point, Defendants emphasize that insofar as Fiedler is seeking compensatory damages on her claim in Count X, intentional discrimination must be alleged as outlined in *Lower Merion*. (*See* Doc. 14, 13-14).

As presently constructed, Fiedler has not set forth a Rehabilitation Act or ADA claim. Fiedler's Rehabilitation Act/ADA claim seeks "compensatory and consequential damages," not declaratory or injunctive relief. (Doc. 1, Count X,

Wherefore Clause).[5]  As a result, Fiedler must allege intentional discrimination to recover the relief requested.  *See Lower Merion*, 729 F.3d at 261 ("We therefore take the next logical step and hold that claims for compensatory damages under § 504 of the RA and § 202 of the ADA also require a finding of intentional discrimination."). And, the facts alleged in the Complaint do not plausibly show that the District acted deliberately indifferent to Fiedler's rights, a point which Fiedler tacitly concedes by arguing she did not need to allege intentional discrimination to proceed with her Rehabilitation Act/ADA claim.  Accordingly, Count X will be dismissed, but Fiedler will be permitted to amend that claim.

## D.  Punitive Damages.

Defendants lastly seek dismissal of Fiedler's request for punitive damages. (*See* Doc. 10, 15).  That aspect of the motion to dismiss will be denied.

"[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983). Whether an award of punitive damages is warranted involves "a fact-intensive issue inappropriate for resolution at the motion to dismiss stage, where no factual record has yet been developed." *Miller v. Helm*, No. 17-1590, 2017 WL 6405738, at *7 (M.D. Pa. Dec. 15, 2017).  Indeed, "this Court has consistently held that it is premature to dismiss demands for punitive damages prior to discovery." *Campbell v. Balon*, No. 16-779, 2017 WL 2880856, at *19 (M.D. Pa. July 6, 2017); *Bobrick Washroom Equip., Inc. v. Scranton Prods., Inc.*, No. 14-853, 2017 WL 2126320, at *11 n.15

---

[5]      It appears that Fiedler has since graduated from the District.  (*See* Doc. 13, 26). Given this, a request for declaratory or injunctive relief under the ADA or Rehabilitation Act would likely be moot.  *See K.K.*, 590 F. App'x at 154 n.4 (citing *Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 218 (3d Cir. 2003)).

(M.D. Pa. May 16, 2017).

The challenge to the demand for punitive damages fails. The allegations against Kovacs that she forced Fiedler to participate in a physical education class over the directions of her physicians because she felt that it had been long enough since Fiedler was injured are adequate at this stage in the litigation to support a plausible finding of reckless or callous indifference to Fiedler's constitutional rights. Given this, Fiedler may proceed to discovery with her request for punitive damages.

**E.     Leave to Amend.**

In her opposition to the motion to dismiss, Fiedler asks that she be given leave to amend to the extent that her Complaint is found deficient in any respect. That request will be granted in part.

Third Circuit "precedent supports the notion that in civil rights cases district courts must offer amendment - irrespective of whether it is requested - when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Amendment is futile "if the amended complaint would not survive a motion to dismiss." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014).

Fiedler will be granted leave to amend. For one, it is possible that she could present a viable substantive due process claim against the District, Toleno, or Cron. Moreover, Fiedler may be able to state a claim against the District for compensatory damages for its alleged violation of the Rehabilitation Act or the ADA. Additionally, she will be given the opportunity to amend her procedural due process deprivation of educational interest claim against all Defendants. To the extent Fiedler wishes to amend her complaint with respect to any of these causes of action, she will be given twenty-one (21) days in which to do so.

## IV. Conclusion

For the above stated reasons, Defendants' motion to dismiss will be granted in part and denied in part.

An appropriate order follows.


December 6, 2019                                      /s/ A. Richard Caputo
Date                                                           A. Richard Caputo
                                                                   United States District Judge